UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ANURAG P. AGARWAL, ) | |
| ) | |
|     *Plaintiff,* ) | |
| ) | No. 1:04-cv-370 |
| v. ) | |
| ) | *Edgar* |
| TENNESSEE VALLEY AUTHORITY, ) | |
| ) | |
|     *Defendant.* ) | |

### **MEMORANDUM**

Plaintiff Anurag P. Agarwal ("Agarwal"), a resident of New Jersey, brings this negligence action against the Tennessee Valley Authority ("TVA") for injuries he alleges he sustained while working for EBASCO Services from December of 1990 until October 1992. Agarwal originally instituted this lawsuit in the United States District Court for the District of New Jersey. TVA moved to dismiss the lawsuit or, in the alternative, to transfer the case to this Court. The New Jersey district court transferred the case to this Court pursuant to 28 U.S.C. § 1406(a).

In 1990 EBASCO subcontracted with TVA to provide engineering services at TVA's Watts Bar Nuclear Plant ("Watts Bar") in Spring City, Tennessee. Agarwal worked at Watts Bar during his tenure with EBASCO and alleges that he contracted a respiratory illness, sarcoidosis, that was caused by his unprotected exposure to aluminum dust present in Watts Bar. TVA moves for summary judgment to dismiss Agarwal's claims solely on the basis that Tennessee's Workers' Compensation Act, Tenn. Code Ann. §§ 50-6-108 and 50-6-113, provides the exclusive remedy for Agarwal's alleged injuries. For purposes of its motion, TVA does not dispute that Agarwal was injured while working at Watts Bar and that aluminum dust caused the injury.

Agarwal opposes the motion. After reviewing the record, the Court concludes that TVA's motion for summary judgment is well taken and will be GRANTED. Agarwal's complaint will be **DISMISSED WITH PREJUDICE**.

### I. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. A claim against a federal corporation created by an Act of Congress, such as the Tennessee Valley Authority Act of 1933 ("TVA Act"), 16 U.S.C. §§ 831-831ee, falls within the grant of federal question judisdiction. *Wayne v. Tennessee Valley Authority*, 730 F.2d 392, 397 (5th Cir.), *cert. denied* 469 U.S. 1159 (1985). Jurisdiction is also proper under 28 U.S.C. § 1337, pertaining to acts regulating commerce. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 328-30 (1936); *Jackson v. Tennessee Valley Authority*, 462 F.Supp. 45, 55 (M.D. Tenn. 1979), *aff'd* 595 F.2d 1120, 1121 (6th Cir. 1979). TVA may sue and be sued pursuant to the TVA act. 16 U.S.C. § 831c(b).

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b). The District Court for the District of New Jersey properly transferred this case to this Court pursuant to 28 U.S.C. § 1406(a). [Court Doc. No. 11].

### II. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III. Choice of Law

Argarwal suggests that the Tennessee Workers' Compensation Act, Tenn. Code Ann. §§ 50-6-108 and 50-6-113, does not apply because he experienced the onset of his illness in New Jersey. 40 U.S.C. § 3172 (2002) allows state workers' compensation laws to apply to employees of

contractors working on federal property. The Tennessee Workers' Compensation Act applies where the injury occurred in the workplace in Tennessee. *See* Tenn. Code Ann. §§ 50-6-101 - 50-6-801; *see e.g., Mathis v. Bowater, Inc.* 985 F.2d 277 (6th Cir. 1993); *Statton-Warren Hardware v. Parker*, 557 S.W.2d 494, 496-97 (Tenn. Sup. Ct. 1977).

**IV.     Facts**

The Court has reviewed the record in the light most favorable to Agarwal and makes the following findings of fact. TVA produces and sells electricity, and is one of the country's largest wholesale suppliers of electricity. [Court Doc. No. 19-1, Declaration of Francine T. Brown "Brown Decl." ¶ 2]. TVA constructed or managed and provided engineering for most of its many power generating facilities, including hydroelectric dams, fossil plants, nuclear plants, electric switching/substations, and electric power transmission lines. *Id.* TVA has been working at Watts Bar since 1973, and TVA's employees, as well as contractor employees have performed various kinds of work on the project. *Id.* at ¶ 3.

In 1990 TVA contracted with EBASCO to provide design and engineering services at Watts Bar. [Court Doc. No. 19-1, ¶ 4, Ex. 1]. The contract contained various provisions relating to TVA's right to control EBASCO's task completion services. For example, the contract stated:

> A. (1) When and as requested by TVA's Contract Officer and agreed to by Contractor, Contractor shall make its personnel and management expertise available to perform task services for TVA in accordance with the scope of work set out in section 1 herein. Such services shall be provided under the overall supervision of TVA.
> (2) Contractor shall have a reasonable time . . . to submit a task proposal to TVA's Contract Officer. . . . Contractor shall commence services of any task assignment only upon receipt of written or oral authorization from TVA's Contract Officer.

*Id.* at Ex. 1, p. 7. The contract also provided TVA with control over EBASCO's personnel:

> A. (1) TVA reserves the right to request from Contractor in writing, prior to assigning any professional personnel to perform any services hereunder, information

> about such individual's qualifications and experience relevant to the performance of the requested services, and such assignment shall be made thereafter only with TVA's written or oral approval. . . .
> (2) . . . If it is determined that a subcontractor or Contractor's personnel fail to meet TVA's qualifications or performance requirements, or for any other reason, TVA reserves the right to direct Contractor to discontinue the services of such subcontractor or personnel.
> C. Contractor shall be responsible for determining that personnel assigned to perform services at a TVA facility meet the citizenship requirements applicable to TVA employees and shall be required to undergo such medical examination and security investigation, and comply with such fitness for duty requirements, including drug and alcohol testing, as TVA may require.
> D. . . . Personnel assigned to TVA facilities shall or should be able to begin work after indoctrination as to TVA's established practices and procedures which shall be followed in the performance of all assignments.

*Id.*, Ex. 1, pp. 12-14.

The contract specified TVA's method of payment for services: "TVA shall reimburse or pay Contractor for the performance of services and related travel including mobilization and demobilization travel in accordance with Contractor's policy. *Id.*, Ex. 1, p. 15. The contract also provided that TVA would reimburse contractor employees on temporary assignment for flights back to the contractor's home base, as well as reimbursement for temporary lodging and relocation costs. *Id.*, Ex. 1, p. 17, 21. The contract stated that "TVA shall reimburse Contractor for costs allowable under this contract. Payment shall be made within 30 days after the receipt by TVA of a certified and proper invoice . . ." *Id.*, Ex. 1, p. 25. The contract made clear that "[c]ontractor and its subcontractors shall maintain Workers' Compensation Insurance as required by applicable State law. The salary burden paid by TVA under this contract includes the cost of such insurance." *Id.*, Ex. 1, p. 32. The contract required all of the contractor's employees to "adhere to TVA Nuclear Power's fitness-for-duty requirements . . ." *Id.*, Ex. 1, p. 53. Further, the contract stated "TVA reserves the right to assign to other contractors work related to the scope of work contained in this contract or perform the work itself if such assignment is in the best interests of TVA." *Id.*, Ex. 1, pp. 59-60.

The contract provided that computer usage could be through TVA's computer mainframe or reimbursed by TVA.  *Id.*, Ex. 1, p. 60.

The contract further specified provisions for TVA's control of the work performed.  It provided that TVA's Contract Officer could "at any time, by oral or written order to Contractor, require Contractor to stop all or any part of the work provided for under section 2.A herein for a period of up to 90 days after the order is delivered to Contractor . . ." *Id.*, Ex. 1, p. 29.  The Contract Officer also maintained the right to "direct changes within the general scope of any task assignment issued . . ." *Id.*, Ex. 1, p. 30.  The contract also provided TVA with control over the quality of the services performed.  The contract stated, "[c]ontractor or its subcontractors shall perform its work under a program that is consistent with the commitments of TVA's established NRC-approved QA program." *Id.*, Ex. 1, p. 44.  TVA reserved the right to terminate the contract "whenever, for any reason, TVA determines that such termination is in the best interest of TVA." *Id.*, Ex. 1, p. 61.  Attachment E to the contract specified salary ranges for contractor employees.  *Id.*, Ex. 1, p. 76.

EBASCO hired Agarwal in December 1990 as a temporary employee to provide engineering services for TVA at Watts Bar. [Court Doc. Nos. 4, 26-1].  Agarwal was EBASCO's direct employee, and EBASCO employed Agarwal as an engineer pursuant to a contract between EBASCO and TVA. [Court Doc. No. 18-1].  Agarwal worked for EBASCO at Watts Bar until in or about October 1992. [Court Doc. No. 4].  TVA's plant procedures controlled and governed all work activities inside Watts Bar.  *Id.*  While Agarwal worked at Watts Bar, TVA reimbursed him for his living expenses.  *Id.*

Agarwal first began experiencing symptoms related to his alleged illness in April 1992. [Court Doc. No. 4].  His condition gradually worsened over time with respiratory problems beginning in June 1992.  *Id.*  Agarwal completed his assignment at Watts Bar in early September

1992 and continued to work for EBASCO until late October 1992. *Id.* Agarwal worked for General Electric Corporation from 1992 until 1997 when his health deteriorated to the point that he was unable to work. *Id.* He was diagnosed with sarcoidosis in July 2000. Agarwal alleges he has suffered injuries leading to a "total and permanent disability" that he claims were caused by TVA's negligence. *Id.*

V.     **Analysis**

The only issue for resolution in TVA's motion for summary judgment is whether TVA is a "statutory employer" under Tenn. Code Ann. § 50-6-113(a). If TVA is considered a "statutory employer" of Agarwal, then Agarwal is barred from bringing a negligence claim in a tort action against TVA. Tenn. Code Ann. § 50-6-113(a) defines a "statutory employer" and states that "[a] principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer." Tenn. Code Ann. § 50-6-113(d) provides that it "applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under the principal contractor's control or management." Tenn. Code Ann. § 50-6-108(a) provides in pertinent part: "[t]he rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury . . . shall exclude all other rights and remedies of such employee . . ." These provisions taken together bar tort recovery against a "statutory employer." *See Posey v. Union Carbide Corp.*, 705 F.2d 833, 834-35 (6th Cir. 1983). The law created "statutory employers" to provide workers' compensation benefits where the injured employee was precluded from recovering benefits from his direct employer. *Murray v. Goodyear Tire and Rubber Co.*, 46 S.W.3d 171 (Tenn. 2001).

If TVA is a "statutory employer" under the Tennessee's Workers' Compensation Act, then workers' compensation benefits are Agarwal's exclusive remedy. *Mathis*, 985 F.2d at 279. If TVA is not a "statutory employer" under the Workers' Compensation Act, then Agarwal has the right to bring a negligence action against TVA pursuant to Tenn. Code Ann. § 50-6-112, which provides for a right of action against third persons.

This case is very similar to *Lambert v. Tennessee Valley Authority*, 2002 WL 32059747 (E.D. Tenn. 2002), previously decided by this Court and attached to TVA's memorandum. The Court's analysis here follows the analysis set forth in *Lambert*. Tennessee courts have established two tests for determining whether an entity such as TVA is a principal contractor and therefore subject to the exclusive remedy provisions of Tenn. Code Ann. § 50-6-113(a). The first test considers whether the "work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees." *Lambert*, 2002 WL 32059747 at * 4; *Murray*, 46 S.W.3d at 176; *Barber v. Ralston Purina*, 825 S.W.2d 96, 99 (Tenn. Ct. App. 1991). Even if TVA fails the first test, it may still be considered a "statutory employer" based on its "right of control over the conduct of the work and over the employees of the subcontractor." *Lambert*, 2002 WL 32059747 at *4; *Murray*, 46 S.W.3d at 176; *Barber*, 825 S.W.2d at 99.

The record demonstrates that TVA is a "statutory employer" under the first test regarding whether the work performed by EBASCO's employees was of the same type usually performed by TVA employees. Although Agarwal insists that the engineering work he performed was unique and specialized and that TVA employees were unable to conduct comparable work, he has not produced any evidence rebutting TVA's evidence that it is in the business of constructing, maintaining, and providing engineering services for TVA's nuclear power plants. [Court Doc. No. 19-1, Brown

Decl.]. His own allegations regarding TVA's engineering incompetence are insufficient to create a genuine issue of material fact on this issue. *See Celotex Corp.*, 477 U.S. at 323.

In addition to TVA's own evidence, courts have documented TVA's presence in the industry of constructing and maintaining power facilities, including nuclear power facilities. As this Court has previously noted, "TVA seems to have been in the business of building nuclear power plants." *Fugunt v. Tennessee Valley Authority*, 545 F.Supp. 977, 980 (E.D. Tenn. 1982); *see also Tweedy v. Tennessee Valley Authority*, 882 F.2d 477, 478 (11th Cir. 1989). Further, this Court has made clear that "TVA is engaged in a business–the operation of nuclear power plants– which by its size and nature requires TVA to have an extensive ongoing program of constant construction, modification, replacement, and maintenance service." *Lambert*, 2002 WL 32059747 at *5. TVA's contract with EBASCO provides that TVA employees may perform duties specified in the terms of the contract. [Court Doc. No. 19-1, Brown Decl., Ex. 1, p. 59-60]. This factor was also weighed as supporting TVA's argument regarding "statutory employer" status in *Lambert*. 2002 WL 32059747 at *5. Because TVA is in the business of constructing and providing engineering services at nuclear power plants, and its contract with EBASCO provided that its own employees could perform work under the contract, TVA is a "statutory employer" under the first test relating to the regular business of the company.

Even if Agarwal could demonstrate that TVA fails the first test, TVA maintained the right to control the work performed under the TVA-EBASCO contract to an extent sufficient to establish "statutory employer" status under the second test relating to the right to control. Tennessee courts analyze several factors in determining whether the right to control exists. These factors include: "(1) right to control the conduct of the work; (2) right of termination; (3) method of payment; (4) whether [EBASCO] furnishes its own helpers; (5) whether [EBASCO] furnishes his own tools; and (6)

whether one is doing work for another." *Mathis*, 985 F.2d at 279; *Stratton v. United Inter-Mountain Telephone*, 695 S.W.2d 947 (Tenn. 1985). While no single factor is dispositive, Tennessee courts emphasize the "right to control the work." *Statton*, 695 S.W.2d at 950; *Mathis*, 985 F.2d at 279; *Barber*, 825 S.W.2d at 99; *Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858, 860 (Tenn. 1976). It is important to note that this test will be satisfied as long as the principal contractor had the right to control the work, regardless of whether the principal contractor actually exercised that control. *Stratton*, 695 S.W.2d at 950; *Murray*, 46 S.W.3d at 176; *Wooten*, 535 S.W. at 860; *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991).

After reviewing the TVA-EBASCO contract and analyzing the six relevant factors, the Court finds that most of the factors clearly weigh in favor of a determination that TVA was a principal contractor under Tenn. Code Ann. § 50-6-113. The TVA-EBASCO contract provided that TVA maintained the right to supervise the work process and authorize commencement of work. [Court Doc. No. 19-1, Ex. 1, p. 7]. The contract required that EBASCO adhere to TVA's quality assurance procedures that included "indoctrination as to TVA's established practices and procedures." *Id.* at 14. TVA had the right to inspect the work at any time and convene project review meetings. *Id.* at Ex. 1, pp. 54, 60. It could also review work to ensure it met TVA's professional standards. *Id.* at Ex. 1, p. 13. TVA maintained a right to terminate the contract "whenever, for any reason, TVA determine[d] that such termination [was] in the best interest of TVA." *Id.* at 61.

The contract also provided for control over EBASCO's personnel. The contract established the salary range for EBASCO's workers and provided for payment of the salary, plus workers' compensation insurance, as well as relocation and lodging expenses. *Id.* at Ex. 1, pp. 15, 17, 21, 37, 76-86. While EBASCO hired its own employees, TVA retained the right to direct EBASCO "to discontinue the services" of personnel if such individuals failed to meet TVA's "qualifications or

performance requirements." *Id.* at Ex. 1, pp. 8, 12-13.  Further, TVA reserved the right to approve assignment of any personnel to work under the contract following TVA's review of the qualifications of the personnel.  *Id.*  TVA also required EBASCO's employees to meet TVA's fitness for duty requirements.  *Id.* at Ex. 1, p. 13, 53-54.  The contract further specified that TVA would provide equipment and use of its computer mainframe for the work to be performed.  *Id.* at Ex. 1, pp. 11, 60-61.  TVA was not performing work for another.  Based on the review of the pertinent factors, the Court finds that TVA was a "statutory employer" within the meaning of Tenn. Code Ann. § 50-6-113.

Other Tennessee courts have found that provisions similar to the ones in the TVA-EBASCO case demonstrate a right of control.  *See Barber*, 825 S.W.2d at 99; *Stratton*, 695 S.W.2d at 950; *see also, Manis v. Erwin Utilities*, 661 F.Supp. 3, 5 (E.D. Tenn. 1986).  For example, in *Stratton*, the Tennessee Supreme Court found a right to control demonstrated by contract provisions relating to authorization of work orders, defendant's right to assign similar work to other contractors or its own employees, the defendant's right not to assign any specific quantity of work to the contractor, the contractor's agreement to perform work in accordance with the defendant's existing practices, the defendant's right to remove any of the contractor's employees with whom it was dissatisfied, and the defendant's right to set the order of precedence of work.  695 S.W.2d at 949.  The contract in *Stratton* also required the contractor to carry workers' compensation insurance.  *Id.*  Similar provisions are found in the TVA-EBASCO contract. [Court Doc. No. 19-1, Ex. 1, pp. 7-9, 12-13, 29, 30, 37, 44, 45, 59-60].

Agarwal makes several arguments regarding TVA's right to control the work at Watts Bar.  These arguments are without merit.  First, he argues that TVA did not actually exercise any control over the work he performed for EBASCO.  As noted above, Tennessee courts have made clear that

it is the right to control, not the actual exercise of control, that is relevant. *Stratton*, 695 S.W.2d at 950; *Murray*, 46 S.W.3d at 176; *Wooten*, 535 S.W. at 860; *Galloway*, 822 S.W.2d at 586. Agarwal's evidence regarding the day-to-day operations at the Watts Bar facility is irrelevant. The only evidence relevant to the issue of right to control is the contract between EBASCO and TVA. Agarwal does not challenge the terms of the contract itself.

Agarwal next argues that TVA did not provide him with a personal computer or a specialized calculator needed for his work. [Court Doc. No. 26-1, p. 16]. However, this evidence that TVA did not provide Agarwal with some minor pieces of equipment for his job does not negate the evidence in the record demonstrating that TVA provided EBASCO with major equipment needed for the work under the contract and that TVA exercised control over the work in numerous other ways. [Court Doc. No. 19-1, Ex. 1, pp.7-9, 11-13, 29, 30, 37, 44-45, 59-60].

Agarwal further asserts that TVA did not set his salary because Attachment E to the contract only contained a salary range for EBASCO employees. However, the contract provided that TVA would reimburse EBASCO for salaries and workers' compensation insurance, as well as relocation and living expenses. *Id.* at Ex. 1, pp. 15, 17, 21, 37, 76-86. The range of salaries provided in Attachment E allowing EBASCO to set a salary within a certain range does not negate the fact that TVA reimbursed EBASCO for payment of the salaries. Agarwal's argument fails.

Agarwal argues that the Tennessee Workers' Compensation Act should not apply in this case. He argues that the Workers' Compensation Act only applies to cases involving construction, and relies on Tenn. Code Ann. § 50-6-113(f) for support. That statutory provision relates to the requirement of employers in the construction industry to carry workers' compensation insurance even if they have fewer than five employees. Section 50-6-113(f) does not preclude the Workers' Compensation Act from applying to non-construction employers. The Tennessee Workers'

Compensation Act is very broad and applies to "any individual, firm, association or corporation . . . using the services of not less than five (5) persons for pay . . . ." Tenn. Code Ann. § 50-6-102(11). As TVA correctly notes, many Tennessee cases illustrate the application of the Workers' Compensation Act in a non-construction setting. *See Erwin v. Methodist Medical Ctr.*, 1999 WL 907557 (Tenn. Ct. App. 1999); *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799 (Tenn. Ct. App. 1983).

Agarwal also contends that the Tennessee Workers' Compensation Act should not apply to him because he was a temporary worker for EBASCO. However, Tennessee courts apply the Workers' Compensation Act to temporary workers. *See Bennett*, 660 S.W.2d at 801; *Abbott v. Klote International Corp.*, 1999 WL 172646 (Tenn. Ct. App. 1999).

Agarwal further contends that because the TVA-EBASCO contract contained a clause that indicated EBASCO was an independent contractor and its employees were not employees of TVA, then TVA cannot be a "statutory employer" under Tenn. Code Ann. § 50-6-313. Tennessee courts have addressed this same argument and determined that language in a contract purporting to establish independent contractor status "is not dispositive." *Barber*, 825 S.W.2d at 100; *Stratton*, 695 S.W.2d at 953; *see also*, *Marion v. Tennessee Valley Authority*, No. 1-99-cv-332, Mem. Op. (E.D. Tenn. Jan. 26, 2001). Tennessee courts have found parties to be "statutory employers" despite the presence of a contract clause purporting to establish independent contractor status. *See e.g.*, *Barber*, 825 S.W.2d at 100. The similar clause alleged in the TVA-EBASCO contract does not establish EBASCO's independent contractor status. Rather, TVA's right to control determines whether TVA has "statutory employer" status. *Id.* at 99.

Agarwal argues that his case is exactly like *Taylor v. EBASCO Constructors, Inc.*, 2003 WL 22697436 (Tenn. 2003). Unfortunately, *Taylor* does not help him in the instant negligence action

against TVA. *Taylor* involves a plaintiff's entitlement to benefits under the Tennessee Workers' Compensation Act and not whether she was entitled to sue a principal contractor on a claim of negligence in a tort action. For purposes of its present motion, TVA does not dispute that Agarwal may be entitled to workers' compensation benefits.

**VI.    Conclusion**

After reviewing the record and the applicable law, the Court concludes that no genuine issue of material fact exists and that TVA was Agarwal's statutory employer. Tenn. Code Ann. § 50-6-108(a) precludes Agarwal from bringing this tort action against TVA. Agarwal's exclusive remedy against TVA for his alleged injury is workers' compensation. TVA's motion for summary judgment will be **GRANTED**, and Agarwal's complaint will be **DISMISSED WITH PREJUDICE**.

A separate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE
